# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CHRISTOPHER ORLOSKI,

      Plaintiff,

v.                         Case No. 8:18-cv-709-T-33MAP

TERRORIST SCREENING
CENTER, et al.,

      Defendants.

_____/

## MOTION TO DISMISS

Under Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, the United States moves on behalf of the Terrorist Screening Center, National Counterterrorism Center, Federal Bureau of Investigation, Office of the Director of National Intelligence, Transportation Security Administration, Transportation Security Operations Center, U.S. Customs and Border Protection, and the Department of Homeland Security (the "federal defendants") to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim and says:

1

## I.     BACKGROUND

### A.     Christopher Orloski

The *pro se* plaintiff Christopher Orloski sues nine federal entities and the Florida Department of Law Enforcement, along with "Does 1 to 100," in a twelve-count amended complaint. Doc. 14. In addition to declaratory and injunctive relief, Orloski seeks $20 million in compensatory damages and $20 million in punitive damages. Doc. 14, p. 23. The basis of the action is Orloski's belief that he "has been erroneously placed by Defendants on the terrorist watchlists, specifically the TSA's Automatic Selectee list." Doc. 14, p. 3. Orloski alleges that the defendants classify him as a "known or suspected terrorist" (KST). Aside from his damages demand, Orloski seeks removal of his name from the "No-Fly" and Automatic Selectee list maintained by TSA as well as "the source watchlist databases" maintained by the other federal defendants. Doc. 14, ¶ 7.

Orloski claims jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1346 (Federal Tort Claims Act), and 1361 (mandamus). Counts one through five allege a violation of Orloski's constitutional rights under color of state law; counts six, seven, eight, ten, and eleven allege tort claims; count nine alleges a claim under the Air Carrier Access Act, the

Americans with Disabilities Act, and the Rehabilitation Act; and count twelve seeks equitable relief. Doc. 14.

To support his claims, Orloski describes nine "airport events" during which he experienced restrictive boarding pass procedures, extended screening, and delayed boarding. Doc. 14, ¶ 33-48. Orloski also alleges that he is mentally disabled, and he describes that disability as "schizoaffective disorder." Doc. 14 ¶ 3, 25. In another pending action in this Court, Orloski blames his periods of incarceration, homelessness, and hospitalization on the publication of the DSM-5 (Diagnostic and Statistical Manual) and the ICD-10-CM (International Statistical Classification of Diseases and Related Health Problems), which ostensibly guided his mental health treatment. Doc. 1-5, pp. 45-49; *see also* "Federal Terrorists, Christof's Second Saga," by Christopher Orloski, Doc. 1-7, p. 31-90.

Orloski is a serial filer of *pro se* civil actions. *See* **Exhibit 1**, Pacer Report.[1] To date, he has filed eleven civil actions in the Middle District of Florida. Orloski almost always seeks leave to proceed *in forma pauperis*, which on at least four occasions resulted in a frivolousness finding under 28 U.S.C.

---

[1] *See Spasojevic v. Wells Fargo Bank, N.A.,* 2014 WL 222942, *1 (M.D. Fla. Jan. 21, 2014) (explaining that, on a motion to dismiss, the Court may consider documents that are public records without converting the motion into a request for summary judgment).

§ 1915. To date, the plaintiff has voluntarily dismissed every action, either before or shortly after receiving an adverse ruling.

| Case Number | Date Closed | Disposition |
|---|---|---|
| 8:15-cv-570-T-23MAP | 6/4/15 | Doc. 10 (IFP decision), voluntarily dismissed |
| 8:15-cv-1842-T-17MAP | 9/24/15 | Doc. 8 (IFP decision), voluntarily dismissed |
| 8:17-cv-0004-T-33TGW | 1/6/17 | Voluntarily dismissed |
| 8:17-cv-553-T-27AAS | 4/12/18 | Voluntarily dismissed[2] |
| 8:17-cv-1815-T-33AAS | 10/3/17 | Voluntarily dismissed |
| 8:17-cv-1925-T-33MAP | 9/6/17 | Voluntarily dismissed[3] |
| 8:17-cv-2139-T-30TBM | 9/20/17 | Voluntarily dismissed |
| 8:17-cv-2303-T-17AAS | 11/21/17 | Doc. 17, voluntarily dismissed |
| 8:18-cv-709-T-33MAP | | Doc. 11, open |
| 8:18-cv-556-T-17CPT | | Open |
| 8:18-cv-1408-T-36AAS | | Open |

As explained by Orloski, he has twice before filed an action arising from airport screening. Doc. 14, ¶ 34, 44. This is the third involving allegedly unlawful screening and the second naming the Terrorist Screening Center as a defendant. *Id.*

---

[2] Two orders deny the plaintiff's motion to proceed *in forma pauperis*, Docs. 5, 14, and the third order, Doc. 20, allows the plaintiff to pay the fee on a payment plan. The case proceeded for more than a year with numerous filings before the plaintiff voluntarily dismissed his case.

[3] An order denies *in forma pauperis* status but allows for a reduced filing fee. Doc. 7.

**B.     The "No Fly" and "Selectee" Lists and the federal defendants.**

Several different components within the federal government work together to secure the United States and its aviation system from terrorist threats.

The Department of Homeland Security ("DHS") is charged with "prevent[ing] terrorist attacks in the United States" and "reduc[ing] the vulnerability of the United States to terrorism." 6 U.S.C. § 111(b)(1)(A)-(B). As part of DHS, U.S. Customs and Border Protection ("CBP") has broad responsibilities, including ensuring the interdiction of persons and goods illegally entering or exiting the United States and conducting inspections at ports of entry to safeguard the United States from terrorists and illegal entry of persons. 6 U.S.C. § 211.

Numerous statutes, including 19 U.S.C. §§ 482, 1455, 1461, 1467, 1499, 1581-82 authorize CBP to stop, search, and examine individuals attempting to cross an international border. This includes inspection for the purpose of preventing terrorist attacks. *Tabbaa v. Chertoff*, 509 F.3d 89, 97 (2d Cir. 2007); *see also* 6 U.S.C. § 211(g)(3)(b) (CBP "conduct[s] inspections at . . . ports of entry to safeguard the United States from terrorism"). TSA supports the department's mission by securing all modes of transportation, including civil aviation. 49 U.S.C. § 114(d).

5

To that end, Congress directed TSA to establish procedures for notifying appropriate officials "of the identity of individuals" who are "known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h)(2). Thus, TSA must "use information from government agencies to identify individuals on passenger lists who may be a threat to civil aviation or national security" and "prevent the individual from boarding an aircraft or take other appropriate action[.]" *Id.* at § 114(h)(3).

TSA is required to implement the No Fly and Selectee Lists by performing "the passenger prescreening function of comparing passenger information to the automatic selectee and no fly lists and utiliz[ing] all appropriate records in the consolidated and integrated terrorist watchlist maintained by the Federal Government in performing that function." 49 U.S.C. § 44903(j)(2)(C)(ii). An individual on the No Fly List cannot board an aircraft; an individual on the Selectee List may enter the sterile area of the airport and board an aircraft only after undergoing enhanced screening. 49 C.F.R. § 1560.105(b)(2), (b)(7)(iii). The FBI administers the TSC,[4] which

---

[4] By executive order on September 16, 2003, the president established the TSC to "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in their possession." https://fas.org/irp/offdocs/nspd/hspd-6.html

provides information to TSA for airline passenger screening. The FBI also investigates and analyzes intelligence related to both domestic and international terrorist activity. 28 U.S.C. § 533; 28 C.F.R. § 0.85(l).

Under the TSA's "Secure Flight" program, airlines request information from passengers and then submits that data to the TSA. 49 C.F.R. § 1560.101(a)(1). TSA uses the information to detect individuals "on Federal government watchlists who seek to travel by air." *Id.* at § 1560.1(b). An aircraft operator may not issue a boarding pass to an individual "until TSA informs the covered aircraft operator of the results of watchlist matching for that passenger," and, if TSA so directs, the aircraft operator "may issue a boarding pass to that individual but must identify the individual for enhanced screening[.]" *Id.* at § 1560.105(b)(2).

Generally, the United States does not to disclose the status of any individual on a watchlist used by TSA for passenger pre-board screening (including the Terrorist Screening Database ("TSDB") and its No Fly List, and Selectee subsets). Watch list status falls within the law enforcement privilege and the statutory protection for Sensitive Security Information ("SSI"). 49 U.S.C. § 114(r); *see Blitz v. Napolitano*, 700 F.3d 733, 737 n. 5 (4th Cir. 2012); *Scherfen v. DHS*, 2010 WL 456784, *8 n.5 (M.D. Pa. Feb. 2, 2010); *see also* 49 C.F.R. § 1520.5(b)(9)(ii).

7

**C.     DHS TRIP redress process.**

Congress directed TSA to "establish a procedure to enable airline
passengers, who are delayed or prohibited from boarding a flight because the
advanced passenger prescreening system determined that they might pose a
threat, to appeal such determination and correct information contained in the
system." 49 U.S.C. §§ 44903(j)(2)(C)(iii)(I); 44903(j)(2)(G)(i), 44926(a). Thus,
TSA administers the Department of Homeland Security's Travel Redress
Inquiry Program ("DHS TRIP"), which provides redress for passengers "who
believe that they have been improperly or unfairly delayed or prohibited from
boarding an aircraft or entering a sterile area[.]" 49 C.F.R. §§ 1560.201;
1560.205. An individual invokes this process by submitting a redress inquiry
form. *Id.* at § 1560.205(b). If the traveler's name matches or nearly matches a
name on the watch list, "TSA, in coordination with the TSC and other
appropriate Federal law enforcement or intelligence agencies, if necessary, will
review all the documentation and information requested from the individual,
correct any erroneous information, and provide the individual with a timely
response." *Id.* at § 1560.205(d).

This includes research and review of information on the watch list and on related U.S. government information systems.[5] Following review, DHS TRIP responds with a determination letter.[6] DHS TRIP also assigns the complainant a redress control number.[7] Although the letters vary, they typically state that the letter is a final agency decision, which is reviewable by the United States Court of Appeals under 49 U.S.C. § 46110. *See* **Exhibit 2**, August 22, 2017, Letter to Orloski.[8]

## II.  MEMORANDUM OF LAW

### A.  The district court lacks subject matter jurisdiction over Orloski's claims.

"Judicial review of orders pertaining to security duties and powers designated to be carried out by the TSA is governed by 49 U.S.C. § 46110(a)." *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784, at \*6 (M.D. Pa. Feb. 2, 2010). Exclusive jurisdiction for review of an order issued in whole or in

---

[5] *See* https://archives.fbi.gov/archives/news/pressrel/press-releases/newly-signed-government-wide-watchlisting-redress-mou; Safeguarding Privacy and Civil Liberties While Keeping Our Skies Safe: Hearing Before the H. Comm. on Homeland Security, 113th Cong., pp. 4-5 (2014) (Statement of Christopher M. Piehota, Director, TSC/FBI), available at https://docs.house.gov/meetings/HM/HM07/20140918/102636/HHRG-113-HM07-Wstate-PiehotaC-20140918.pdf.

[6] https://www.dhs.gov/step-3-after-your-inquiry.

[7] *See* https://www.dhs.gov/dhs-trip.

[8] This letter is susceptible to consideration on a motion to dismiss because the letter is both central to the plaintiff's claim and the authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276

part by TSA rests with the federal courts of appeal. *Id.*; 49 U.S.C. § 46110(a);

*Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010). For the purpose of Section

46110, "order" is construed broadly. *Corbett v. United States*, 458 F. App'x 866,

869 (11th Cir. 2012). A TSA security directive concerning the screening of a

passenger constitutes an "order" within the meaning of Section 46110(a).

*Scherfen*, 2010 WL 456784 at *6; *Green v. Transp. Security Admin.*, 351 F. Supp.

2d 1119, 1125 (W.D. Wash. 2005).

Furthermore, all claims inescapably intertwined with an order falling

under Section 46110 reside within the exclusive jurisdiction of the courts of

appeal, including claims against the TSC for alleged placement on a watch list.

*Roberts v. Napolitano*, 798 F. Supp. 2d 7, 10-12 (D.D.C. 2011); *Americopters,*

*LLC v. F.A.A.*, 441 F.3d 726, 736 (9th Cir. 2006) (explaining that the purpose

of the rule is to prevent litigants from using a damages claim as a collateral

attack on an order under Section 46110 and allow dismissal of claims that are

an end-run around the jurisdictional limit of Section 46110); *Ligon*, 614 F.3d at

154-57; *see also Corbett*, 458 F. App'x at 871; *Falahati v. Egan*, 638 F. App'x

984, 985 (11th Cir. 2016).

Here, Orloski alleges that, on November 5, 2015, he "received a

Redress Control Number (2218084) after application and complaint to DHS's

Traveler Redress Inquiry Program." Doc. 14, ¶ 41. Additionally, on August

22, 2017, Orloski "received a Redress Control Number (2559108) after application and complaint to DHS' Traveler Redress Inquiry Program." Doc. 14, ¶ 45. Orloski complains that the redress control number had no effect on his automatic selectee status. *Id.* However, Orloski neither alleges whether he received a final determination from DHS TRIP nor attaches a copy of the final determination. The only plausible inference from his allegations is that he received some response from TSA and was dissatisfied with the result. Hence this civil action.

Both Section 46110(a) and applicable precedent show that Orloski's claim in this action belongs within the exclusive jurisdiction of the courts of appeal. Orloski cannot, without more, invoke this Court's jurisdiction over his claim that he is wrongfully on a watch list. *See* 5 Fed. Prac. & Proc. Civ. § 1206 (3d ed.) (explaining that until the plaintiff demonstrates a basis for jurisdiction, "the converse is true.").

### B.   Orloski fails to invoke this Court's subject matter jurisdiction over his tort claims.

In a lawsuit against the United States or an officer of the United States, the plaintiff "must allege—in the complaint—the applicable waiver of sovereign immunity. A failure to plead the statutory waiver of sovereign immunity results in a failure to invoke the court's subject matter jurisdiction." *Lake Chase Condo. Ass'n, Inc. v. Sec'y of Hous. & Urban Dev.*, No. 8:12-cv-177-T-

23TBM, 2013 WL 3772487, at *1 & n.2 (M.D. Fla. July 16, 2013) (citing 5

Fed. Prac. & Proc. Civ. § 1212 (3d ed.)); Fed. R. Civ. P. 8(a).

Counts six, seven, eight, and ten assert tort claims against all

defendants. As to the federal defendants, Orloski fails to invoke a statutory

waiver of sovereign immunity. Although Orloski claims that he filed an

administrative tort claim with the FBI and with the Office of the Director of

National Intelligence (DNI), Doc. 14 ¶ 46, he attaches neither claim to his

amended complaint. Additionally, although Orloski sues nine federal entities,

his tort claims are undifferentiated—each count alleges generically that the

"defendants" wronged him. To state a claim against every federal defendant,

however, he must show that he exhausted the administrative claims process

for every defendant.

Furthermore, under Section 2679(b) of Title 28, United States Code,

the exclusive remedy for a state law tort claim against a federal employee

acting within the scope of his employment is an action against the United

States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2672 (the

"FTCA"). *See Matsushita Elec. Co. v. Zeigler*, 158 F.3d 1167, 1169 (11th Cir.

1998); *Brown v. United States,* No. 5:08-cv-118-Oc-10GRJ, 2009 WL 2044684,

*2 (M.D. Fla. July 10, 2009). Thus, the agency is not a proper party. *Id.* This

12

remains true even if the FTCA precludes recovery against the United States. *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992).

Additionally, the FTCA excepts from the statutory waiver of immunity "[a]ny claim . . . based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). The purpose of this exception is "to assure that the legality of a rule or regulation [is] not [] tested through the medium of a damage suit for tort." *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1261-62 (2d Cir. 1975). "Due care" in executing a statute "implies at least some minimal concern for the rights of others." *Id.* (quoting *Hatahley v. United States*, 351 U.S. 173, 181 (1956)).

Here, Orloski's complaint contains no allegation supporting the inference that employees of the federal defendants failed to act with due care in executing the applicable statutes and regulations which, as described above, require identifying and screening passengers who may be a threat to civil aviation or national security. Federal employees who implement screening based on the watch lists have no discretion whether to screen or deny boarding to a passenger on those lists. As long as they execute that duty with at least a

13

minimal concern for the rights of others, their conduct falls outside the statutory waiver of immunity in the FTCA.[9]

### C. The United States has not waived sovereign immunity for a constitutional tort claim.

Sovereign immunity bars the plaintiff's claims. *McLaughlin v. United States*, 2014 WL 1047298, *2, No. 5:12-cv-Oc-23PRL (M.D. Fla. March 17, 2014) (explaining that the United States "has not waived sovereign immunity from liability for an award of damages arising from an alleged violation of the Constitution.") (citing *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994)). In other words, the plaintiff cannot assert constitutional tort claims against the federal defendants or the United States because no waiver of immunity for such claims exists. *Meyer*, 510 U.S. 477-78.

### D. Even if cognizable, Orloski's constitutional claims are insufficient as a matter of law.

#### i. All claims against CBP should be dismissed.

Because Orloski includes all "defendants" in each count of the amended complaint, the United States cannot readily determine how many of the counts apply to CBP. Count five mentions CBP by name and alleges that two searches conducted by CBP in 2015, *see* Doc. 14 ¶ 33, 40, violated his right

---

[9] Additionally, the FTCA contains no waiver of sovereign immunity for equitable relief. 28 U.S.C. § 1346(b).

against unlawful searches and seizures. However, this and every other count against CBP based on the alleged searches and seizures should be dismissed.

"The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004). Thus, CBP has extraordinarily broad authority to conduct border searches. *Id.* (explaining that searches involving "stopping and examining persons and property crossing into this country[] are reasonable simply by virtue of the fact that they occur at the border.") The Eleventh Circuit has held that this includes the ability to search, without suspicion, the electronic devices of those individuals seeking to enter the United States. *United States v. Vergara*, 884 F.3d 1309 (11th Cir. 2018); *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018). Furthermore, Orloski's claims appears premised on his allegation that the defendants improperly included him on the Selectee List. But he fails to allege what role, if any, CBP played in Orloski's alleged placement on that list.

In addition to the reasons elaborated in Section II.C., the tort claims should be dismissed as to CBP (1) because Orloski failed to timely file administrative claims with the agency and (2) because even if timely, Orloski failed to exhaust his administrative remedy before suing. Orloski's allegations involving CBP focus on two events. Orloski alleges that on February 6, 2015,

CBP agents photocopied his paper documents, seized his electronic equipment, and transferred those items to Homeland Security Investigations ("HSI"). On March 16, 2015, Orloski filed a civil action in this Court against DHS seeking the return of his property. *See* 8:15-cv-570-T-23-MAP.[10] That complaint raises the same allegations as this one—that the search and seizure of his property constituted a Fourth Amendment violation. Yet Orloski filed his SF-95 with CBP on April 25, 2018—one day after filing this action.[11] Because Orloski believed on March 16, 2015, that the alleged search and seizure of his property violated his rights, Orloski has no plausible excuse for waiting more than three years to file his administrative tort claim with CBP.

Orloski further alleges that on July 8, 2015, CBP detained him for two hours for an interrogation and search. Again, Orloski failed to file an administrative tort claim with CBP until April 25, 2018, almost three years after the alleged events occurred. This is untimely under 28 U.S.C. § 2401(b). Furthermore, the FTCA requires exhaustion before a civil action begins. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111-12 (1993). CBP has not yet rendered a decision on Orloski's administrative tort claim, and six months has not elapsed from the filing of his administrative tort claim.

---

[10] On June 3, 2015, the Court granted Orloski's motion to voluntarily dismiss the case.

[11] See **Exhibit 3**, CPB SF-95; *see supra* note 8.

### ii. Orloski fails to allege deprivation of a constitutionally protected liberty interest for the purpose of a due process claim.

To state a claim for a procedural due process violation, Orloski must allege (1) a cognizable liberty or property interest, (2) the deprivation of that interest by some form of state action, and (3) constitutionally inadequate procedures. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). A substantive due process claim also requires that Orloski allege government infringement of a fundamental liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

Orloski fails to allege the deprivation of a constitutionally protected liberty interest. Travel delay and inconvenience cause no deprivation of the right to travel. *Green*, 351 F. Supp. 2d at 1130; *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991). Inspections at the airport or at the border also cause no cognizable violation of the right to travel. *Scherfen*, 2010 WL 456784 at *7; *Beydoun v. Lynch*, 2016 WL 3753561, *5 (E.D. Mich. July 14, 2016); League *of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007); *see also Scherfen*, 2010 WL 456784 at *7 (noting "heightened screening at airports and border crossing points does not necessarily signify inclusion" on a watchlist because "[t]ravelers may be pulled out of line, searched, and questioned for a variety of reasons, unrelated to watch lists.")); 73 Fed. Reg.

64,018, 64,025 (Oct. 8, 2008) ("standard passenger and baggage screening . . . may include additional, random screening"); *id.* at 64,026 ("[Passengers who are not on the Selectee List] will not always avoid enhanced screening.").

In fact, "'[t]ravelers do not have a constitutional right to the most convenient form of travel [, and] minor restrictions on travel simply do not amount to the denial of a fundamental right.'" *Beydoun*, 2016 WL 3753561 at *4 (quoting *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)); *see also Kadura v. Lynch*, No. CV 14-13128, 2017 WL 914249, at *7 (E.D. Mich. Mar. 8, 2017) (same); *Bazzi v. Lynch*, 2016 WL 4525240, at *6-7 (E.D. Mich. Aug. 30, 2016) (same); *Abdi v. Wray*, 2:17-cv-622-DB, at *5-6 (D. Utah April 23, 2018) (the Fifth Amendment does not contemplate "a right to convenient or unimpeded travel").

An "injury to reputation by itself [i]s not a liberty interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Here, Orloski fails to allege reputational harm amounting to a constitutional violation, which requires both a governmental action that damaged his reputation and some deprivation of a right or status previously recognized by state law. *Paul v. Davis*, 424 U.S. 693, 711 (1976); *Beydoun*, 2016 WL 3753561 at *5; *Green*, 351 F. Supp. 2d at 1129-30. This is called the "stigma-plus" test. *Id.* Because Orloski can still fly, albeit after enhanced screening, he cannot

plausibly allege that, because of his alleged watchlist status, he cannot do something that he otherwise had the right to do. *See Beydoun*, 2016 WL 3753561 at *5. Even if Orloski could show the "plus" factor, he cannot establish stigma because stigma is almost completely absent in a search at a known search point, such as an airport. *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973)[12]; *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006) (explaining that "[s]ince every air passenger is subjected to a search, there is virtually no 'stigma attached to being subjected to search at a known, designated airport search point.'").

Finally, an airport is not a public forum for the purpose of First Amendment free speech rights. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679-80 (1992). Therefore, a restriction on speech at an airport need only satisfy a reasonableness requirement. *Id.*[13]

Thus, Orloski fails to allege the deprivation of a liberty interest sufficient to support his due process claim.

---

[12] Recognizing as binding precedent all decisions of the former Fifth Circuit Court of Appeals before September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[13] The gist of count two is unclear. The claim could be construed to assert a First Amendment challenge to either Orloski's placement on a watch list or what he believes is the underlying incident leading to his placement on the list. *See* 2007 Criminal Complaint, **Exhibit 4**. If the former, the claim is inescapably intertwined with a TSA order and belongs to the courts of appeal. If the latter, his claim is likely precluded by his written plea agreement. **Exhibit 5**. *See supra* note 1.

**E.      Orloski's discrimination claims fail as a matter of law.**

Count nine alleges a claim for discrimination based on a "mental disability" and the alleged denial of a "reasonable accommodation" at TSA security checkpoints. Orloski cites the Air Carrier Access Act, 49 U.S.C. § 41705 ("ACAA"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; and the Rehabilitation Act, 29 U.S.C. § 791, et seq.

None of these statutes applies here. ACAA applies to an "air carrier," which means "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(2); 41705. Because no defendant falls within that definition, ACAA is inapplicable. Furthermore, even if a federal defendant could be construed as an "air carrier," no private right of action exists under this statute. *Stokes v. Southwest Airlines*, 887 F.3d 199, 202-03 (5th Cir. 2018); *Love v. Delta Airlines*, 310 F.3d 1347, 1359 (11th Cir. 2002).

Furthermore, the federal defendants fall outside the coverage of Title II of the ADA, which concerns discrimination in the provision of public services. Under that title, the term "public entity" means a state or local government or certain railroad entities. 42 U.S.C. § 12131(1). The remaining portions of the ADA are also inapplicable to the federal defendants, because they apply to employment and public accommodations provided by private entities. *See* 42

U.S.C. ch. 126, subchs. I, III.  The Rehabilitation Act applies to employment

of individuals with disabilities by the federal government and is similarly

inapplicable here. 29 U.S.C. § 791.

**WHEREFORE**, for the reasons described in this motion, the defendant

moves for an order dismissing the amended complaint, Doc. 14, without leave

to amend.

<div style="margin-left:40%">

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


/s/Lindsay S. Griffin
LINDSAY SAXE GRIFFIN
Assistant United States Attorney
Florida Bar No. 72761
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone No.: (813) 274-6000
Fax No.: (813) 274-6198
Email: lindsay.griffin@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2018, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system,

which will send a notice of electronic filing to all CM/ECF participants.

Additionally, I sent a copy of this document by U.S. Mail to the following:

      Christopher Orloski
      1450 S MLK Jr. Ave Apt. 704
      Clearwater, FL 33756

                                        s/Lindsay S. Griffin
                                        Assistant United States Attorney